IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: Joan Thompson Williams,<br>    Debtor. | BANKRUPTCY CASE NUMBER<br>**22-02525-RSM**<br>CHAPTER 7 |
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, N.A. AS TRUSTEE FOR STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-AR8,<br>    Movant, | **CONTESTED MATTER** |
| vs. | |
| JOAN THOMPSON WILLIAMS;<br>ERICA R. JOHNSON, Trustee,<br>    Respondents. | |

## OPPOSITION TO BANK OF NEW YORK MELLON'S MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY and OBJECTION TO THIS CREDITOR'S CLAIM

Debtor, Joan Thompson Williams ("Debtor" or "Ms. Williams"), hereby opposes the Motion for Abandonment and Relief from Automatic Stay filed by "secured creditor" The Bank of New York Mellon ("BNYM") f/k/a The Bank of New York as Successor in Interest to JP Morgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Inc. Mortgage Pass-Through Certificates Series 2005-AR8, based on the following:

1. **Introduction**

BNYM, in its alleged capacity of "trustee" on behalf of certain "certificates" which clearly appear to be mortgage-backed securities, claims it has the authority to enforce and foreclose upon a certain "mortgage loan" and/or the "debt" purportedly associated therewith. Debtor, Joan

Williams, is identified as the borrower on that certain "mortgage loan" (the "subject loan"). In its Motion, BNYM seeks to have the automatic stay lifted on the basis that it wants to "foreclose" on the subject loan and take Ms. Williams' real property, because of an alleged "default" on the part of the borrower; and because of alleged amounts "due and owing" on the mortgage "debt." BNYM implies that the mortgage loan "contract" contains terms which, under certain conditions, provide the requisite authority for BNYM to foreclose.

However, Debtor alleges that BNYM has intentionally misrepresented and/or omitted facts that prove BNYM does not, in fact, have the authority to foreclose, or to seek the relief sought in its Motion, for reasons more specifically explained herein. Consequently, Debtor asks the Court to deny BNYM's Motion in all aspects, not only on the basis that it lacks authority to enforce and/or foreclose upon the "mortgage loan," but also because of the bad faith and Fraud upon the Court committed by submitting false statements, false evidence, and false claims in signed pleadings and papers filed in this matter.

2.     **The Subject Loan is Securitized**

While BNYM has attempted to conceal the name of the entity for which it acts as "trustee," Debtor has discovered this information is freely available on the SEC website. This trust entity is named "Structured Asset Mortgage Investments II Trust 2005-AR8" (the "securitized trust"). This trust is a Special Purpose Vehicle (SPV) which was created solely for the purpose of issuing mortgage-backed securities funded by mortgage payments from borrowers.

Securitization of mortgage loans is a highly defective process which results in borrowers being misled to believe they have applied for, and have received, a "plain vanilla" mortgage loan based on the fact that standard, "plain vanilla" loan documents are still used to obtain borrowers' signatures, when, in reality, once the truth is known, securitized loans are so vastly different from

2
Case 3:22-bk-02525    Doc 16    Filed 09/09/22    Entered 09/09/22 16:18:50    Desc Main
Document      Page 2 of 13

such "traditional" loans that they are barely recognizable as such.

Comparing the two, in a "traditional" mortgage loan, the funds are provided by the Lender. The loan transaction is completely and truthfully disclosed in the loan documents the Borrower executes. The parties to the transaction are properly identified to the Borrower, as are the rights and obligations of the parties. The Lender has a legal "lien" on the property "secured" by the loan, and has the authority to commence foreclosure proceedings to enforce the "lien" if the loan is not repaid. This Lender, therefore, is a legitimate "creditor" that loaned its own money and is legally owed the debt. However, the Lender has an obligation to apply the Borrower's mortgage payments toward "principal" and "interest" as stated in the loan documents (and as required by law) by first accounting for the payment as a "receivable" on its books and records, and then, separating the amount of "repayment of principal" (typically not taxed) from the "interest income" (generally fully taxable) for tax purposes.

In a securitized loan, the party named as the "Lender" on the loan documents is, more often than not, merely a "third party originator" who is paid a fee to obtain borrowers' signatures on loan documents. The funds for this type loan come from monies which have been solicited from secondary-market investors who purchased mortgage-backed securities ***before the loans ever existed.*** In a "securitized" loan, the transaction described in the loan documents never takes place, and instead, a disguised securities transaction, which is not disclosed to the Borrower, replaces it. In a "securitized" loan, the parties to the actual transaction are not identified in the loan documents, nor are the rights and obligations of the parties. Perhaps worst of all, in a "securitized" loan, the Borrower's payments are irreversibly commingled with payments submitted from many other borrowers into a "pool" which has been sliced into "tranches" from which the "returns" paid on various "mortgage-backed securities" are derived. These "returns" are paid out to secondary-

market investors under terms and conditions which are totally different than those stated in the Borrower's loan documents.  Under this scenario, NO ONE accounts for the amounts of "repayment of principal" and "interest income" as receivables on their books and records for tax purposes; the Borrower does not, and cannot, reduce the amounts of "principal" and "interest" from any amount of payments submitted; and the loan "debt" cannot ever be paid off – or even paid *down* – in this manner.

Needless to say, a borrower could also never obtain valid, unencumbered title to the property she believed she was buying, even if she submitted all 360 monthly payments into the securitization "scheme" because no recipient of her money has the authority to (a) cancel and return the original Note marked "paid in full;" (b) issue a "satisfaction of mortgage" and record it in the public property records where the mortgage was recorded; and (c) convey clear, unencumbered title to the property to the Borrower by way of a recorded Deed.

Because of all these defects inherent in the securitization process, Movant BNYM has falsely stated (a) its status as a "secured creditor;" (b) its supposed "authority" to enforce and/or foreclose upon the subject "mortgage loan;" (c) the purported "accounting" and/or "application" of the mortgage payments, and the alleged "debt" associated therewith; and, therefore, (d) the purported "default" on the part of the borrower, Debtor Joan Williams.  These false statements require, at a minimum, the denial of BNYM's Motion, or, as a justifiable response, the issuance of sanctions against BNYM and its attorneys for knowingly defrauding the Debtor and the Court in this matter.

    **3.**    **BNYM has Filed a False Claim as a "Secured Creditor"**

As demonstrated herein, BNYM has no legal interest in the property owned by Debtor, or in the alleged "debt" purportedly created by the "mortgage loan" transaction.  Debtor argues that

it is provable that the ONLY transaction which occurred was the disguised securities transaction which was concealed from the Debtor at the time of origination of the subject "mortgage loan" and at all times thereafter. It was only through research that Debtor learned of the true nature of securitization and how her mortgage payments were routinely misapplied and paid out to strangers without her knowledge or permission.

Debtor asserts that this unlawful conversion of her money; as well as the fact that the securitized trust never legally owned her "mortgage loan" or the "debt" purportedly associated therewith; as well as the fact that only strangers to the "mortgage loan" transaction received her payments (in amounts impossible to determine, and under terms and conditions which are totally foreign to those stated in the loan documents); resulted in the inescapable reality that BNYM does not now, nor ever did, have a legally-enforceable "secured" interest in her property. In other words, the fact that the nature of the "debt" is falsely stated in BNYM's papers, renders its claim, at a minimum, as "unsecured," or worse, as false and/or fraudulent, rendering it as no valid claim *at all.*

Debtor submits that this Court has the authority and the means to determine the true status of this purported "creditor" by following one mortgage payment through to its final recipient, to see whether Debtor's allegations are not absolutely true.

In the mean time, Debtor hereby challenges and disputes BNYM's status as "secured creditor" and on this basis, seeks denial of its Motion for Relief from Stay.

4. **BNYM has Submitted a False "Accounting"**

To create the *appearance* of "amounts due and owing" and of a "default" on the part of Ms. Williams, relating to alleged "interest" and "principal" balances remaining on the "mortgage debt," BNYM has used and submitted various expressions of a false "off-balance sheet"

5
Case 3:22-bk-02525   Doc 16   Filed 09/09/22   Entered 09/09/22 16:18:50   Desc Main
Document      Page 5 of 13

accounting meant to deceive the borrower and this Court. Its Motion contains another variation of this false "accounting."

However, BNYM, as securitized "trustee," is fully aware that this so-called "accounting" is 100% FALSE because what really happened is that none of the mortgage payments submitted by Ms. Williams were EVER properly "applied" toward the reduction of "interest" and "principal" by virtue of the fact that the subject "mortgage loan" has, effectively, been converted to a securities transaction, where there is no legitimate "lender" or "creditor" who did, or could, account for those payments as "receivables" on its own books and records, then divided them into "repayment of principal" and "interest income" so that taxes are only paid on the taxable portion of any payment. Instead, all of Ms. Williams' mortgage payments were put into the "pool" where they were irreversibly commingled with many other payments, and then paid out to investors (strangers to the "mortgage loan" transaction) as "returns" under the terms of securitization.

Therefore, Debtor challenges this "accounting" submitted by BNYM and requests the Court to take measures to determine where her mortgage payments actually went; who received them, and in what amounts; and whether the ultimate recipients properly "applied" those payments toward the reduction of "interest" and "principal" as was required of the "Lender" by the terms stated in the loan documents.

Debtor further challenges the claims of BNYM in that she alleges that any amount collected by BNYM could never reduce the "mortgage debt" since the loan has been permanently converted to a securities transaction, where no amount she already paid has ever properly been "applied" toward the reduction of "interest" and "principal" – thus, the demands of "payment" by BNYM constitute an "impossibility" placed upon the borrower to ever satisfy a "debt" which has been grossly misrepresented.

6
Case 3:22-bk-02525    Doc 16    Filed 09/09/22    Entered 09/09/22 16:18:50    Desc Main
Document    Page 6 of 13

### 5. The Mortgage Loan Documents are not a Valid "Contract"

BNYM's Motion is also based on its claim of "authority" to foreclose the subject "mortgage loan" based on its implied position that the subject loan documents constitute a valid, totally enforceable "contract." Ms. Williams wholeheartedly disagrees.

For any contract to be valid, it must, among other things, fully disclose the transaction; the parties to the transaction; the rights and obligations of the parties; and other elements specific to that transaction (which, in the case of a mortgage loan "contract," includes the specific procedure of applying the payments submitted by the borrower).

In this regard, Ms. Williams contends:

<u>First</u>, that her mortgage loan documents do not constitute a valid, enforceable "contract" because the "mortgage loan" transaction described in the subject Note and Mortgage – where "America's Wholesale Lender" would "lend" its own money, and then, in accordance with paragraph 2 of the subject Deed of Trust, properly "apply" any and all mortgage payments submitted by Ms. Williams toward the reduction of "interest" and "principal" on its own books and records – never happened; but instead, the securitization transaction – where the subject loan would be listed as an "asset" so that all mortgage payments submitted by the borrower would be used to fund the "returns" paid to the secondary-market investors – was the ONLY transaction which ever occurred.

<u>Second</u>, that the parties to the *actual* (securities) transaction were never identified.

<u>Third</u>, since the actual parties were not identified, it follows, then, that the rights and obligations of the parties were falsely stated.

<u>Fourth</u>, on information and belief, the source of the funds for the "loan" was not America's Wholesale Lender, as stated in the loan documents, but some other undisclosed entity – likely an

investment bank in New York (possibly Bank of New York Mellon) involved with handling the funds solicited from investors. If true, this means Ms. Williams never "owed" the "lender" named in the loan documents; and consequently, would never "owe" any purported "successor" to the "lender" named in the loan documents.

No "contract" which fails to disclose all the necessary elements to the transaction, as is the case here with the subject loan documents, could be considered "valid" or "enforceable," but instead, only that which expresses a lack of good faith, unclean hands, and unfair dealing.

In addition, by inducing the borrower to sign "plain vanilla" loan documents when, in reality, a totally different transaction will take place, with a totally different use of the borrower's payments, such loan documents are missing the essential element of "mutuality of obligation" where both parties are obligated to perform. In the case of the subject mortgage loan documents, one of the main obligations on the "lender" side is to properly "apply" all of Ms. Williams' mortgage payments toward the reduction of "principal" and "interest" so that she may properly pay down her "debt" with each payment submitted. However, because the Williams loan was securitized, this essential obligation was never complied with.

Basically, BNYM's position in this matter is that Ms. Williams is somehow "obligated" to continue making mortgage payments, while the false "lender" was somehow never "obligated" to properly apply all mortgage payments toward "interest" and "principal" as represented in the loan documents. This absurd and untenable position renders the purported "contract" to a one-sided set of "orders" as if Ms. Williams is some kind of soldier who must obey and unquestionably do what she is told…."or else" suffer the loss of her home.

On top of this, since it is proven that the subject loan has been securitized, no amount of money submitted by Ms. Williams to BNYM could ever reduce the mortgage "debt" because that

"debt" has been ***permanently converted*** to a securities transaction, where every dollar of "mortgage payments" are ***irreversibly commingled*** with other monies, and then, in amounts impossible to determine, paid to strangers to whom Ms. Williams never owed anything.

Since BNYM's position is completely opposite to that of Ms. Williams, Debtor respectfully requests that the Court use its inherent authority to schedule and/or conduct any evidentiary proceedings necessary to at least determine where the money came from to fund the subject "mortgage loan," as well as "following the money" to ascertain who actually received it, and the amounts thereof. Determining the source of the funds for the loan may be as simple as demanding this commonly-retained information contained within the loan's "collateral file" often referred to as the "funding check" (even though it is rarely a check, but most often, a wire transfer record of the funds, accompanied by a separate set of "closing instructions" specifically for those funds). It would be hard to imagine that BNYM does not possess all of this information and/or documentation.

Therefore, based on the above, Ms. Williams contends that her loan documents do not constitute a valid, enforceable "contract" and, on this basis, BNYM's Motion for Relief from Stay should be denied.

**6. All "Assignments" of the Williams Deed of Trust are False**

By virtue of the fact that the Williams mortgage loan was securitized, and as a result, the loan has been listed as an "asset" of the securitized trust <u>continuously</u> from the origination of the loan to the present time, **all** of the recorded "assignments" of the Williams Deed of Trust (there have been ***three*** of them) are 100% FALSE as they do not, and cannot, be "evidence" of any "transfer" of interest in the subject Deed of Trust, or the associated Note or the "debt" the Note is alleged to "evidence."

9
Case 3:22-bk-02525    Doc 16    Filed 09/09/22    Entered 09/09/22 16:18:50    Desc Main
Document    Page 9 of 13

(There are additional reasons why any attempted "assignment" of any mortgage or deed of trust by Mortgage Electronic Registration Systems, Inc. ("MERS") is legally ineffective, most of which involve the fact that MERS never, at any time, has any interest in the money or the property in any mortgage loan, and as such, has no authority to "assign" or "transfer" rights and/or interests which it does not itself possess – but for the purposes of opposing the Motion for Relief from the Stay, the fact that the Williams "mortgage loan" has been securitized is sufficient proof by itself to show a lack of authority on the part of BNYM.)

However, it should further be noted that offering a false instrument for filing or recording is a crime under the 2010 Tennessee Code, Title 39 "Criminal Offenses," Chapter 14 "Offenses Against Property" Part 1 "Theft" 39-14-114 "Forgery" generally, particularly when a purported "transfer" of real property is involved. Yet, this very "chain" of three purported "assignments" are what BNYM rely upon to "support" its alleged claim of "authority." Clearly, BNYM's Motion cannot be granted in light of its improper acts of concealment, false instruments recorded in the public property records, and other fraudulent practices.

**7.   Counsel for BNYM have Violated the Rules of Professional Conduct**

The submission of false statements, a false "accounting," and reliance upon numerous false "assignments" are not only violations of bankruptcy rules, but also, constitute violations of the Tennessee Rules of Professional Conduct which regulate the acts of attorneys. For example, Rule of Professional Conduct 3.3 "Candor Toward the Tribunal" states, in pertinent part:

(a) A lawyer shall not knowingly:

(1) **make a false statement of material fact** or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) **fail to disclose to the tribunal legal authority** in the controlling jurisdiction

**known to the lawyer to be directly adverse to the position of the client** and not disclosed by opposing counsel; or

(3) **offer evidence that the lawyer knows to be false.**

Ms. Williams argues that BNYM has falsely stated: (a) its status as "secured creditor;" (b) the alleged "accounting" for the mortgage "debt;" (c) its authority to enforce and foreclose upon the purported "mortgage loan;" and (d) the enforceability of the mortgage loan documents as a purported "contract;" and in the process, has concealed the truth regarding (e) the true "application" (i.e., "conversion") of Ms. Williams' mortgage payments as for an improper purpose; (f) the fact that the fraudulent "debt" is not legally "secured" by the subject property; (g) the fact that the securitized trust for which BNYM acts as "trustee" has no legal ownership in the subject "mortgage loan" or the Debtor's property associated therewith; and (g) the fact that the only transaction which took place in the instant matter is the disguised securities transaction.

False statements and/or false "evidence" aimed at improperly swaying the judicial process in order to obtain "relief" or "judgment" or some other inappropriate result, constitute Fraud Upon the Court – a type of fraud intended to destroy the judicial "machinery" and ensure that justice is not available to the opposing party. By way of Fraud Upon the Court, no "relief" should issue in favor of the party committing the fraud.

As a result of these intentional misrepresentations and concealment of the truth, BNYM's Motion cannot be granted, and instead, its attorneys should be subject to sanctions for actively participating in a fraudulent scheme to help an unauthorized party steal Ms. Williams' home and throw her and her family out into the street.

Therefore, in addition to denying BNYM's Motion for Relief from Stay, the Court should consider issuing an Order to Show Cause as to why counsel for BNYM should not be sanctioned for their egregious misconduct by misrepresenting essentially all of the facts relating to the

securitization of the Williams "mortgage loan" and the serious ramifications stemming therefrom.

**8.     There is no "Abandonment"**

Finally, Debtor argues that there has been no "abandonment" as alleged by BNYM. Debtor has certainly not "abandoned" her property, as she still lives in the home as her primary residence. As to any other "definition" claimed by BNYM, Debtor has not "abandoned" anything related to the property in question, and the only reason she refuses to make any more "mortgage payments" is because, as a result of the fatal defects inherent in the securitization of her loan, it would be unconscionable to do so.

## CONCLUSION

Based on the foregoing, BNYM's Motion for Relief from Automatic Stay must be DENIED in all aspects.

In addition, Debtor respectfully requests this Court conduct whatever evidentiary proceedings deemed necessary to determine the validity – or lack thereof – of BNYM's "secured creditor" claim, and if found to be lacking, to take appropriate action deemed in the best interests of justice.

Respectfully submitted,

DATED this 9th day of September, 2022.

_/s/ Joan T. Williams_
Joan Thompson Williams
1008 Chapel Lake Circle
Franklin, Tennessee 37069
(615) 794-1936
anatoliaassociatesllc@gmail.com
*Debtor self-represented*

# CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that service of the foregoing OPPOSITION TO BANK OF NEW YORK MELLON'S MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY and OBJECTION TO THIS CREDITOR'S CLAIM was made this 9th day of September, 2022, by electronic service through the court's electronic filing platform, addressed to the recipients listed below:

**Attn:** Natalie Brown
RUBIN LUBLIN TN, PLLC
119 S. Main Street, Suite 500
Memphis, Tennessee 38103
nbrown@rlselaw.com
*Attorney for The Bank of New York Mellon f/k/a*
*The Bank of New York as Successor in Interest to*
*JP Morgan Chase Bank, N.A. as Trustee for*
*Structured Asset Mortgage Investments II Inc.*
*Mortgage Pass-Through Certificates Series 2005-AR8*

**Attn:** Erica R. Johnson
95 White Bridge Road #503
Nashville, Tennessee 37205
erjtrustee@erjlaw.com
*Trustee*

_____
Joan T. Williams